**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

**MINA ORTEGA,**

      **Plaintiff,**

**v.**                                    **No. 14-CV-628 MCA/SCY**

**NEW MEXICO LEGAL AID, INC.,
and ED MARKS, individually and
as Director of New Mexico Legal Aid,
Inc., SIEMPRE UNIDOS EN
PROGRESO, a Unit of National
Organization of Legal Services
Workers ("NOLSW")/AUW Local
2320 International United Auto
Workers, ALF-CIO, DONIS BORKS,
Individually and as Union Organizer,
and ALICIA CLARK, Individually
and as Grievance Chair for Siempre
Unidos en Progreso.**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the following motions:  Plaintiff's *Motion for Remand* [Doc. 25]; *Defendants Union, Borks and Clark's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)* [Doc. 29]; *Defendants' Motion to Dismiss Amended Complaint or Alternatively for Summary Judgment and Memorandum Brief in Support Thereof* [Doc. 30] filed by Defendant New Mexico Legal Aid, Inc. and Ed Marks; and Plaintiff's *Motion to Stay*

*Mediation Conference*, [Doc. 9-1].[1]   The Court has considered the submissions, the pertinent law and is otherwise fully informed in the premises.

## BACKGROUND

Plaintiff filed this suit in the Third Judicial District Court, County of Doña Ana, New Mexico on June 8, 2014.  [Doc. 1-1]  Defendants New Mexico Legal Aid (hereafter, Employer or NMLA) and Ed Marks (Executive Director of NMLA) removed the case to this Court with the consent of the remaining Defendants.   [Doc. 1, Doc. 1-1, ¶ 7] Defendants submit that this Court has jurisdiction of this case on the basis of federal question jurisdiction. [Doc. 1, ¶ 2]  Plaintiff moves for remand.  [Doc. 25]

Plaintiff was a staff attorney for Employer from October of 2008 until she was discharged on January 30, 2014.  [Doc. 24, ¶¶ 8, 12]  Plaintiff alleges that she was discharged on grounds of alleged gross misconduct (which she disputes), and that her discharge was in violation of various provisions of the controlling Collective Bargaining Agreement (CBA).  [Doc. 24, ¶¶ 9, 12, 53, 58]  The Union and Plaintiff submitted to Employer a grievance of Plaintiff's discharge.  [Doc. 24, ¶ 14]  However, there was conflict between Plaintiff and the Union from early on in the grievance process.  One issue of contention was Plaintiff's reading of the CBA. [Doc. 24, ¶¶ 13, 15-19]  Plaintiff reads the CBA to allow her to seek redress from a Court of law without following the grievance process outlined in the CBA and to require the Union to represent her in Court,

---

[1] As recognized by the Union Defendants [Doc. 29-1, p. 2], by filing an Amended Complaint [Doc. 24] in response to Defendants' Motions to Dismiss the Original Complaint [Doc. 6, Doc. 8], Plaintiff rendered Defendants' Motions to Dismiss the Original Complaint moot.  *See* Fed. R. Civ. P. 15(a)(1)(B) (allowing a party to amend its pleading once as a matter of course in response to a motion to dismiss).

and she challenged the position otherwise of the Union's Representative, Borks, and the Union's Grievance Chair, Clark.  [Doc. 24, ¶¶ 13, 15-19, 54]  Further, the Union asked Plaintiff to execute a broad release of information to allow the Union to obtain employment records from Employer and discuss her grievance with Employer.  [Doc. 24, ¶¶ 25-26]  Plaintiff did not agree, and attempted to limit and condition the release of information from Employer to the Union.  [Doc. 24, ¶¶ 25-28]  In response, the Union threatened to withdraw the grievance if Plaintiff did not agree to an unconditional and unlimited release of information.  [Doc. 24, ¶¶ 30-31]  Among other claims, Plaintiff also alleges that the Union failed to investigate her claim [Doc. 24, ¶¶ 33, 37] and scheduled mediation of her grievance on a date for which she was unavailable instead of on the date on which the Union officials knew they and Plaintiff were all available.  [Doc. 24, ¶¶ 36, 37]  Thus, Plaintiff claims that, as of two days before the scheduled mediation, the Union representatives had failed to obtain her responses to the allegations made by Employer and failed to communicate with her.  [Doc. 24, ¶¶ 33-37]  Accordingly, Plaintiff filed suit in state Court and moved to stay the mediation.  [Doc. 1-1; Doc. 9-1]

Plaintiff brings claims against Employer for wrongful termination and breach of contract (the CBA), and she brings a claim against the Union, Borks and Clark for breach of the duty of fair representation.  [Doc. 24, ¶¶ 58-61, 65]  Plaintiff also brings a claim for breach of fiduciary duty against Borks and Clark and she requests a declaratory judgment against "Defendants" declaring, *inter alia*, that the grievance process is not Plaintiff's exclusive remedy, that she has the right to Union representation in a court of

law, that the Union must pay Plaintiff to represent herself in court, and that her Employer breached the CBA and wrongfully terminated her.  [Doc. 24, ¶¶ 62-64]

The CBA sets forth a grievance procedure for discharged employees.[2]   "All disciplinary actions or matters are subject to the grievance procedure as set forth in the CBA."  [Doc. 29-4, p. 10, ¶ 5.1.c]  A grievance is defined as "any dispute brought by an employee, group of employees or the Union, arising under this Agreement, or the rules, policies or decisions of the Employer, and affecting an individual employee, group of employees, the bargaining unit as a whole, or the Union."  [Doc. 29-4, p. 12, ¶ 6.1] Because Plaintiff was terminated for alleged gross misconduct, the following provisions of the CBA are also pertinent:

5.7  GROSS MISCONDUCT

. . .

---

[2] These excerpts of the CBA are taken from a CBA attached to the Union Defendants' Motion to Dismiss.  [Doc. 29-4]  Plaintiff "disputes the authenticity of Exhibit C as the complete CBA" but "agrees" to Articles 5 and 6, which are the Articles from which the Court takes excerpts.  [Doc. 38, p. 1]  Plaintiff expressly relies on these Articles of the CBA in bringing her breach of contract, wrongful termination, and declaratory judgment claims.  [Doc. 24, ¶¶ 15, 58-62]  Thus, the Court may consider the CBA without converting the Motions to Dismiss to motions for summary judgment.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.")  Though the parties have submitted other documents attached to their motions and responses, the Court expressly declines to consider those documents in ruling on the Motions to Dismiss.  *See id.* (stating that generally a Rule 12(b)(6) motion to dismiss "must be converted to a motion for summary judgment if matters outside the pleading are presented to and not excluded by the court" after notice and the reasonable opportunity to present all pertinent material to the court (internal quotation marks and citation omitted)).

     b.    An employee shall have the right to Union representation at all stages of discharge for gross misconduct proceedings.

     c.    The Union or the Union on behalf of the employee may appeal a suspension or a discharge decision made by the Executive Director by requesting, within fifteen (15) working days of the receipt of the Director's written decision, that a mediator be selected through the Federal Mediation and Conciliation Service pursuant to mediation provision in Article 6.9(d).

[Doc. 29-4, p. 12]

The grievance procedure has five steps. [Doc. 29-4, pp. 13-15] Because Plaintiff was discharged, her grievance began at step two, a formal written grievance to Plaintiff's supervisor. [Doc. 29-4, p. 13, ¶¶ 6.9, 6.9.b] Plaintiff completed step two as well as step three, a formal written appeal of grievance to Employer's executive director. [Doc. 24, ¶ 33; Doc. 29-4, p. 14, ¶ 6.9.c] Plaintiff brought this Complaint before the Step 4 mediation took place. [Doc. 1-1, ¶ 17] The CBA states the following concerning mediation and the final step, arbitration:

     d.    Step 4:    Mediation:

     1.    The Union and the Employer may mutually agree to invoke mediation. If mediation is not agreed upon, or if mediation is unsuccessful, the parties may then proceed to arbitration.

     2.    If the grievance is not satisfactorily resolved in Step 2, and the Union or the Union on behalf of the employee chooses to go forward with the grievance, the Union shall request, within twenty-one (21) calendar days of the receipt of the Director's written decision, that a mediator be selected through the Federal Mediation and Conciliation Service, or an agreed upon independent Mediator, in accordance with the procedures of said agency.

     3.    The expense of the mediation shall be divided equally between Union and Employer.

     4.    If mediation is not agreed upon, or if mediation is unsuccessful, the parties may then proceed to arbitration.

     e.    Step 5:    Arbitration: follow Article 6.10 below.

6.10 ARBITRATION

a.     If a grievance is not satisfactorily resolved in any preceding Step, the grievance may be submitted to binding arbitration.   The Union shall provide notice to the Executive Director of its intent to arbitrate within fifteen (15) days of the date of completion of the mediation process.

[Doc. 29-4, p. 14, ¶¶ 6.9.d to 6.10.a]  Finally, Plaintiff's argument rests on the following language in the CBA:  "Nothing contained herein shall limit or otherwise exclude any grievant from seeking redress from any government agency, regulatory body or court of law."  [Doc. 29-4, p. 13, ¶ 6.2.c]

**MOTION TO REMAND**

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  This statute provides for original district court jurisdiction over Plaintiff's complaint if the well-pleaded allegations assert a federal cause of action.  *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807 (1986).  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "permits suits for breach of a collective bargaining agreement."  *Vaca v. Sipes,* 386 U.S. 171, 179-80 (1967).  Congress expressly established federal court jurisdiction for suits "by or against labor organizations" under 29 U.S.C. § 185(c).  In addition to suits against an employer for an unfair labor practice, the Supreme Court has also inferred from Section 301 and other federal labor law that unions have a statutory duty to fairly represent all

employees within their bargaining unit.  *Vaca*, 386 U.S. at 177, 185-86; *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563 (1990) ("The duty of fair representation is inferred from unions' exclusive authority under the National Labor Relations Act (NLRA), 49 Stat. 449, 29 U.S.C. § 159(a) (1982 ed.), to represent all employees in a bargaining unit.").  Accordingly, where a union's actions are "arbitrary, discriminatory, or in bad faith," an employee can bring a suit against the union under federal common law for violation of its duty of fair representation.  *Vaca*, 386 U.S. at 190.  Such suits typically arise under what is commonly referred to as a "hybrid" Section 301/duty of fair representation claim which "combines two conceptually independent causes of action," one against the employer for violating Section 301 and one against the union for breach of the duty of fair representation.  *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998).

In *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), employees brought suit against their employer, and the question was whether removal was proper because the employees' claims were completely preempted by Section 301 of the Labor Management Relations Act.  *Id.* at 388, 392.  The Court reiterated the general rule that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Id.* at 392. Nonetheless, the Court ruled that

> the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.  Any such suit is purely a creature of federal law,

7

> notwithstanding the fact that state law would provide a cause of action in
> the absence of § 301.

*Caterpillar*, 482 U.S. at 394 (internal quotation marks, citation and brackets omitted). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Id.* (internal quotation marks and citation omitted).

Applying *Caterpillar*, our Tenth Circuit held that federal jurisdiction existed in a hybrid Section 301/duty of fair representation (DFR) case brought by an employee against his employer and his union, even though the complaint only alleged only state law causes of action. *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1301 (10th Cir. 2000). *Cisneros*, like this case, was initially filed in state court but was removed to federal court. *Id.* The Court pointed out that Section 301 "preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Id.* at 1302 (internal quotation marks and citation omitted). Accordingly, even where a complaint alleges only a state law cause of action, the Court must "determine whether the wrong complained of arose from a breach of obligations under the collective bargaining agreement." *Id.* at 1302-03 (internal quotation marks and citation omitted). If it does, the complaint brings a question of federal law and federal jurisdiction exists. *Id.* at 1302.

*Caterpillar* and *Cisneros* make it clear that federal question jurisdiction exists in this case. As a basis for Plaintiff's first and second counts, Plaintiff expressly alleges that NMLA breached the CBA, and thus she brings a Section 301 claim. [Doc. 24, ¶¶ 58-60,

61]  Next, Plaintiff seeks a declaratory judgment that, *inter alia*, her Employer breached the CBA [Doc. 24, ¶ 62.i], the Union must represent her in court or pay her to represent herself [Doc. 24, ¶¶ 62.b, 62.d] and otherwise declaring rights established by the CBA. [Doc. 24, ¶ 62]  Plaintiff's breach of the duty of fair representation claim is also clearly a creation of federal law.  [Doc. 24, ¶ 65]  *See id.* ("We conclude that this action arises under § 301 and that we therefore have jurisdiction."); *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1476 (10th Cir. 1993) ("[S]uits under § 301 of the LMRA are governed by federal common law.").  Finally, though Plaintiff has also alleged a breach of fiduciary duty by Bork and Clark, Plaintiff has not pleaded any other basis for a fiduciary duty besides their employee-union relationship.  [Doc. 24, ¶ 63-64]  Accordingly, federal question jurisdiction exists.

Plaintiff argues that, regardless of the above law, the following language in the CBA allows her to defeat removal:  "Nothing contained herein shall limit or otherwise exclude any grievant from seeking redress from **any** government agency, regulatory body, or court of law."  [Doc. 25, p. 2, (emphasis by Plaintiff) quoting Section 6.2.c of CBA [Doc. 29-4, p. 13]]  The Court is not persuaded that the single word "any" in Section 6.2.c the CBA surreptitiously overrides the entire body of law on complete preemption and federal jurisdiction outlined above. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) (stating that "the relationships created by [a collective-bargaining] agreement [must] be defined by application of an evolving federal common law grounded in national labor policy" (internal quotation marks and citation omitted)). Nor can this clause defeat Defendants' statutory right to remove a case to federal court,

9

even though Plaintiff could bring it in state court, because the case raises questions of federal law.  28 U.S.C. § 1441(a).  Thus, Plaintiff's Motion to Remand is denied.

**MOTIONS TO DISMISS**

A court will dismiss a complaint for Afailure to state a claim upon which relief can be granted.@   Fed. R. Civ. P. 12(b)(6).   For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957):  a complaint was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), the Court retired *Conley*'s test, replacing it with a new standard:  "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570)). In applying this standard, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint.  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim" that "'raise a right to relief above the speculative level.=" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).

10

In short, in ruling on a 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

In a hybrid Section 301/DFR case, the employee may sue her employer, the union, or both. *Webb*, 155 F.3d at 1239. Under any of these scenarios, the employee must prove: "(1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) A violation of the collective bargaining agreement by the company." *Id.*

In "defining the relationships" created by collective bargaining agreements, the Court cannot simply "apply principles of ordinary contract law[,]", but instead must apply "an evolving federal common law grounded in national labor policy." *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 224-25 (1983). "Fundamental to federal labor policy is the grievance procedure." *Id.* at 225. Thus, generally, "[a]n employee can bring suit under § 301 of the LMRA only if he or she has exhausted the contractual remedies provided in the collective bargaining agreements." *Aguinaga*, 993 F.2d at 1471 (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976)).

> Collective-bargaining contracts . . . generally contain procedures for the settlement of disputes through mutual discussion and arbitration. These provisions are among those which are to be enforced under s 301. Furthermore, Congress has specified in s 203(d), 61 Stat. 154, 29 U.S.C. s 173(d), that "(f)inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes . . . ." This congressional policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *Steelworkers v.*

> *American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1404 (1960). Courts are not to usurp those functions which collective-bargaining contracts have properly "entrusted to the arbitration tribunal." *Id.*, at 569, 80 S.Ct., at 1347, 4 L.Ed.2d at 1405.

*Hines*, 424 U.S. at 562-63.

> [I]f the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement.

*Vaca*, 386 U.S. at 184.

There are limited exceptions to the exhaustion of administrative remedies requirement, however, including when the union breaches its duty of fair representation. *Id.* at 185-86.  Plaintiff relies on this exception, as well as language in *Republic Steel Corporation v. Maddox*, 379 U.S. 650, 657-58 (1965), which states:  "The federal rule would not of course preclude [the employee's] court suit if the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy." The Court addresses each argument in turn.

> ### The Language of the CBA

The Court addresses Plaintiff's *Maddox* argument first.  While *Maddox* correctly states the law, several other cases flesh out the principal stated in passing in *Maddox*. These cases are reviewed in *AT&T Tech., Inc. v. Commc'n. Workers of Am.*, 475 U.S. 643, 648-50 (1986).  *AT&T* reaffirms the following principles:  1) "'[A]rbitration is a

matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit[,]'" *AT&T,* 475 U.S. at 648 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); 2) "the question of arbitrability-whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably an issue for judicial determination[,]" *id.* at 649; 3) "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claim[,]" *id.*; and 4) "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *Id.* at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582-83). It is this last principle, the presumption of arbitrability, which Plaintiff has failed to overcome.

The language of the CBA as a whole establishes that the grievance procedure, culminating in arbitration, is mandatory.  The CBA states that:  "All disciplinary actions or matters are subject to the grievance procedure as set forth in the CBA."  [Doc. 29-4, p. 10, 5.1.c]  Plaintiff's dispute falls under the definition of a grievance:  "A 'grievance' shall mean any dispute brought by an employee, group of employees or the Union, arising under this Agreement, or the rules, policies or decisions of the Employer, and affecting an individual employee, group of employees, the bargaining unit as a whole, or the Union."  [Doc. 29-4, p. 12, ¶ 6.1]  The CBA further states that "Grievances *shall*

13

*proceed according to the following steps*, except that grievances concerning the discharge or lay off of an employee shall begin at Step 2." [Doc. 29-4, p. 13, ¶ 6.9 (emphasis added)] Step 2 is a "Formal Written Grievance to Supervisor;" Step 3 is a "Formal Written Appeal of Grievance to Executive Director;" Step 4 is optional mediation; and Step 5 is "*binding* arbitration." [Doc. 29-4, pp. 13-14, ¶¶ 6.9 to 6.10.a (emphasis added)] The Union and Employer could have, but did not, use clear language expressly stating that no employees were required to exhaust the grievance procedure. Thus, the Court is not persuaded that Section 6.2.c creates a blanket exception to the grievance process, which would essentially render meaningless the several provisions in the CBA outlined above.

Additionally, the Court must apply the presumption of arbitrability, and find arbitrability unless "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T,* 475 U.S. at 650 (internal quotation marks and citation omitted). Doing so, the Court concludes that a more likely interpretation 6.2.c is that employees are not limited or excluded from seeking relief from courts, government agencies or regulatory bodies for claims which "can be resolved without interpreting the [collective bargaining] agreement," as discussed in cases such as *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1988) (stating that the "§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements"). Thus, the Court reads Section 6.2.c to make clear the intent of Employer

14

and the Union to avoid application of *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 251 (2009), which held that a CBA which "clearly and unmistakably requires union members to arbitrate claims arising under the Age Discrimination in Employment Act . . . is enforceable."  The language of Section 6.2.c, therefore, could reasonably be understood to exclude cases not based on the CBA, for example, discrimination, unemployment, or state law whistleblower claims, from being processed through the grievance procedure. In addition to not rendering language of the CBA meaningless, this understanding of Section 6.2.c does no violence to the fundamental balance struck by federal labor law, requiring arbitration of grievances based on the CBA.  *See Bowen*, 459 U.S. at 225 ("Fundamental to federal labor policy is the grievance procedure."); *Clayton*, 451 U.S. at 686 ("Congress had expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the common law of the plant" (internal quotation marks and citation omitted)).  Applying *AT&T*, the Court must resolve any doubt in favor of application of the grievance process.  *AT&T,* 475 U.S. at 650.  Because a reasonable interpretation does not exclude Plaintiff's claims from the grievance process, the Court concludes that Section 6.2.c does not allow Plaintiff to seek redress in a Court of law for her claims without first exhausting the grievance process.  *Id.*

For the above reasons, the Court concludes that the grievance procedure set forth in Plaintiff's CBA is mandatory in cases such as Plaintiff's, which are based on the CBA.

*The Duty to Fairly Represent*

Plaintiff also relies on various alleged wrongs by the Union to argue that the Union breached its duty of fair representation.  As stated above, an exception to the

requirement to exhaust the grievance process exists when a union breaches its duty to fairly represent an employee.  *Vaca*, 386 U.S. 185-86.  Plaintiff submits that the Union breached its duty to fairly represent her by, among other things, failing to investigate her claim.  [Doc. 24, ¶ 37]

Our Tenth Circuit has recognized that the failure to investigate a claim can, in limited circumstances, establish a failure to represent:

> In *Foust*, the Tenth Circuit agreed with other circuits that "the failure to investigate the merits of a grievance could be arbitrary conduct and a breach of a duty." *See Foust*, 572 F.2d at 716 (citing *de Arroyo v. Sindicato de Trabajadores Packinghouse*, 425 F.2d 281 (1st Cir.1970); *Hughes v. International Bhd. of Teamsters, Local 683*, 554 F.2d 365 (9th Cir.1977)). The amount of investigation required of a union to meet its duty of fair representation depends on the circumstances of each case. *See Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir.1995) (holding that the thoroughness of a union's required investigation depends on the particular case); *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1395 (9th Cir.1985) (same).

*Webb*, 155 F.3d at 1241.  This failure to investigate, however, requires more than "mere negligent conduct; carelessness or honest mistakes."  *Id.* at 1240.

Even assuming that Plaintiff has alleged facts sufficient to state a claim for the failure to investigate her claim and otherwise breached its duty to fairly represent her, Plaintiff fails to plead facts which could establish that "the union's breach affected the integrity of the arbitration process."  *Id.* at 1239; *see also Hines*, 424 U.S. at 569 (framing the question as whether an employee can avoid the finality of an arbitration when the employee claims that "the process has fundamentally malfunctioned by reason of the bad-faith performance of the union").  Without a "malfunction" in the grievance process, Plaintiff cannot be said to have suffered any harm by the Union's actions.  *See Hines*, 424

U.S. at 569; *c.f. Bowen*, 459 U.S. at 229, 235-36 (discussing the attribution of damages in hybrid §301/DFR cases and pointing out that the union is only "liable in damages to the extent that its misconduct adds to the difficulty and expense of collecting from the employer" (internal quotation marks, citation and brackets omitted)).  The Union did not stop the grievance process – Plaintiff did.[3]  Accordingly, Plaintiff has not exhausted the grievance process and her claim must be dismissed.[4]  *Webb,* 155 F.3d at 1239.  For the same reasons that Plaintiff's claim must be dismissed, the Court will not grant Plaintiff's Motion to Stay the mediation.

**CONCLUSION**

**WHEREFORE, IT IS HEREBY ORDERED** that:

1)  Plaintiff's *Motion for Remand* [Doc. 25] is **DENIED**;

2)  *Defendants Union, Borks and Clark's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)* [Doc. 29] is **GRANTED**;

3)  *Defendants' Motion to Dismiss Amended Complaint or Alternatively for Summary Judgment and Memorandum Brief in Support Thereof* [Doc. 30] filed by NMLA and Ed Marks is **GRANTED**; and

4)  Plaintiff's *Motion to Stay Mediation Conference* [Doc. 9-1, p. 5] is **DENIED**.

---

[3] This procedural fact also renders futile any attempt by Plaintiff to amend her Complaint.
[4] Because the Court dismisses Plaintiff's complaint for the failure to exhaust her administrative remedies the Court does not address Defendants' remaining grounds for dismissal.

**IT IS FURTHER HEREBY ORDERED** that Plaintiff's *Amended Complaint for Wrongful Termination, Breach of Contract, Declaratory Judgment, Breach of Fiduciary Duty, and Breach of Duty of Fair Representation* is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED** this 17th day of February, 2015 in Albuquerque, New Mexico.


_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court