IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**MINA ORTEGA,**

    Plaintiff,

v.                                                 No. 14-CV-628 MCA/SCY

**NEW MEXICO LEGAL AID, INC.,
and ED MARKS, individually and
as Director of New Mexico Legal Aid,
Inc., SIEMPRE UNIDOS EN
PROGRESO, a Unit of National
Organization of Legal Services
Workers ("NOLSW")/AUW Local
2320 International United Auto
Workers, ALF-CIO, DONIS BORKS,
Individually and as Union Organizer,
and ALICIA CLARK, Individually
and as Grievance Chair for Siempre
Unidos en Progreso.**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's *Motion to Alter or Amend Judgment and Order* [Doc. 53] and her *Emergency Motion to Stay Pending Disposition of Rule 59(e) Motion* [Doc. 54]. The Court, having considered the submissions, the relevant law, and being otherwise fully informed, DENIES both Motions.

**BACKGROUND**

On February 17, 2015, this Court entered a *Memorandum Opinion and Order* [Doc. 51] and a *Judgment* dismissing this action. [Doc. 52] On March 17, 2015, Plaintiff

1

timely filed a *Motion to Alter or Amend Judgment and Order*.  [Doc. 53]  Three days later she filed an *Emergency Motion to Stay Pending Disposition of Rule 59(e) Motion*.  [Doc. 54]  In her *Motion to Alter or Amend Judgment and Order*, Plaintiff argues that this Court misread the applicable Collective Bargaining Agreement (CBA), misunderstood Plaintiff's argument, decided issues not presented and applied the wrong law.  [Doc. 53, p. 2]  In her *Emergency Motion*, Plaintiff asks the Court to enter an "order staying proceedings to enforce the judgment entered on February 17, 2015, and specifically the scheduling of a mediation conference pending the disposition of her *Motion to Alter or Amend Judgment and Order*."  [Doc. 54, p. 1]  Plaintiff submits that the Union, through its attorney, has attempted to schedule the mediation and "is threatening to withdraw her grievance for 'lack of cooperation' if she does not cooperate in rescheduling the mediation conference[.]"  [Doc. 54, ¶ 5]  She further submits:

> To force Plaintiff to engage in mediation which is a key issue in her case before she has exhausted her rights before the Court, is highly prejudicial to her and forecloses all of her rights and would render her claims moot despite the Court having dismissed her complaint without prejudice, given Plaintiff's contention that mediation ends her remedies and the fact that the statute of limitations has run on her claims, and Plaintiff would be unable to amend her complaint.

[Doc. 54, ¶ 9]

**ANALYSIS**

### *Emergency Motion*

Because Plaintiff's *Emergency Motion to Stay Pending Disposition of Rule 59(e) Motion* ultimately turns on the merits of Plaintiff's *Motion to Alter or Amend Judgment and Order*, and because Plaintiff's *Motion to Alter or Amend Judgment and Order* is

2

fully briefed, the Court will decide the *Motion to Alter or Amend Judgment and Order* on the merits in an expedited manner rather than address Plaintiff's *Emergency Motion*. Nonetheless, in the interest of fully explaining the Court's reasoning, the Court addresses two legal issues raised in the *Emergency Motion*.

The parties dispute the standard to be applied to the relief requested by Plaintiff. In her opening brief, Plaintiff does not identify the procedural basis for her post-closure *Emergency Motion*. [Doc. 54] The Union Defendants ask the Court to view the matter as a motion for a temporary restraining order or injunction. [Doc. 55, p. 2] The NM Legal Aid Defendants point to the standard for stays discussed in *New Mexico v. Bank of Am. Corp.*, No. CIV. 13-478 MV/LFG, Document 54 at *2 (D.N.M. October 23, 2013) and similar cases addressing discovery stays under Federal Rule of Civil Procedure 26. [Doc. 58, pp. 2-3] Plaintiff replies that the relief she seeks is pursuant to Federal Rule of Civil Procedure 62, which states: "On appropriate terms for the opposing party's security, the court may stay the execution of a judgment--or any proceedings to enforce it--pending disposition of any of the following motions: . . . (3) under Rule 59, for a new trial or to alter or amend a judgment[.]" Fed. R. Civ. P. 62(b). [Doc. 60, pp. 2-3; Doc. 67, pp. 2-5] Plaintiff thus argues that the standards identified by Defendants are inapplicable.

Plaintiff indeed asks this Court to stay its judgment: "Plaintiff urges the Court entertain her motion on an emergency basis and to grant her stay of the judgment and order[.]" [Doc. 54, p. 4] However, the Court's Judgment merely dismissed Plaintiff's case. Accordingly, simply staying the Court's Judgment (dismissal of her claim) does not grant Plaintiff the second request she makes, which is to "stay the scheduling of

3

mediation, pending resolution of her Motion to Alter or Amend Judgment and Order." [Doc. 54, p. 4] Plaintiff thus asks this Court to prevent, or enjoin, Defendants Legal Aid and the Union from engaging in their bargained for dispute resolution process, in addition to "staying" the Court's Judgment. Plaintiff must, therefore, establish the requirements for relief under Federal Rule of Civil Procedure 65, "Injunctions and Restraining Orders," which are:

> A plaintiff seeking a preliminary injunction must establish [1] that he [or she] is likely to succeed on the merits, [2] that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his [or her] favor, and [4] that an injunction is in the public interest.

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *C.f. Illinois Bell Tele. Co. v. Worldcom Techs., Inc.*, 157 F.3d 500, 503 (7th Cir. 1998) (refusing to enjoin a state commission's order and explaining that "[a] judicial order that prevents a statute, regulation, or administrative decision from taking effect is an injunction [not a stay under Rule 62] and must be justified under the standards commonly used to evaluate judicial interference with the decisions of the political branches of government"). However, since Plaintiff has already lost on the merits and now is seeking a reconsideration of the ruling, the Court believes the appropriate lens through which to view the likelihood of Plaintiff's success on the merits is the standard for obtaining relief on a Motion to Alter or Amend the Judgment.

The stay requested by Plaintiff raises a potential jurisdictional issue. In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Court held that a state tort claim which was "substantially dependent upon analysis of the terms" of a collective bargaining

agreement "should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement, or dismissed as pre-empted by § 301." *Id.* at 220-21 (internal citations omitted).  Though this language stops short of stating that this Court lacks jurisdiction to interfere with the contractual grievance process, the Supreme Court has held that federal district courts are without the power to enjoin hearings by the National Labor Relations Board.  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938).  Thus, if the Court were to enjoin an arbitration where the party had not yet exhausted her remedies under the CBA, the Court may either be acting without jurisdiction, or, at the least, inappropriately meddling in the Congressionally designed labor dispute resolution process.  *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-63 (1976) (stating that "congressional policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play" and that Courts "are not to usurp those functions which collective-bargaining contracts have properly entrusted to the arbitration tribunal" (internal quotation marks and citations omitted)).  Whether this Court may or should act, therefore, turns squarely on the merits of Plaintiff's *Motion to Reconsider*.  For these reasons, and because Plaintiff's *Motion to Reconsider* is fully briefed, the Court addresses the issue in full rather than in a "preliminary" posture.

***Motion to Reconsider***

> A motion to reconsider is an
>
> inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. Absent

> extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed. . . . Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.

*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (internal citations omitted). "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F.Supp. 1482, 1483 (D.Kan. 1994).

"An employee can bring suit under § 301 of the LMRA only if he or she has exhausted the contractual remedies provided in the collective bargaining agreements." *Aguinaga v. United Food & Commercial Workers Int'l. Union*, 993 F.2d 1463, 1471 (10th Cir. 1993) (citing *Hines*, 424 U.S. at 563). "[A] central tenet of federal labor-contract law under § 301 [is] that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers Corp.*, 471 U.S. at 220.

Plaintiff makes a multitude of arguments, mostly taking sentences from the *Memorandum Opinion and Order* and attempting to contradict the Court's statements. [Doc. 53, pp. 2, 4-5, 6, 7, 9-11] As one grounds for altering the Judgment, Plaintiff points to language in the CBA, in part focusing on language other than that upon which she first relied and in part reiterating her prior arguments, to argue that her interpretation of the CBA must prevail. [Doc. 53, pp. 6-10; Doc. 39, 8-10] These arguments merit only summary discussion. *See Servants of the Paraclete*, 204 F.3d at 1012 (rejecting reliance on previously available facts in a motion to reconsider); *Voelkel*, 846 F.Supp. at 1483

6

(same).  The Court has carefully reviewed the language to which Plaintiff cites, and, for the same reasons discussed in the *Memorandum Opinion and Order*, remains convinced that "[t]he language of the CBA as a whole establishes that the grievance procedure, culminating in arbitration, is mandatory."  [Doc. 51, pp. 13-14]  The CBA states that "All disciplinary actions or matters are subject to the grievance procedure as set forth in the CBA."  [Doc. 29-4, p. 10, ¶ 5.1.c]  Plaintiff fails to present any reading of Section 6.2.c which does not "essentially render meaningless" this language or the rest of the CBA which indicates that the grievance procedure is mandatory.  [Doc. 51, p. 14]

Plaintiff attacks the Court's reliance on *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986).  Plaintiff argues that *AT&T* is distinguishable because, she states, in *AT&T* there was "no clear, unambiguous exclusion from arbitration of termination."  [Doc. 53, p. 6]  *See AT&T*, 475 U.S. at 647.  Plaintiff submits that "here is a clear and unambiguous provision of the CBA (Article 6.2c) which, notwithstanding the grievance procedure in the CBA, gives any grievant the right to seek redress in court."  [Doc. 53, p. 6]  The Court has already rejected Plaintiff's interpretation of Article 6.2.c, however, and thus this argument is not persuasive.

Plaintiff also raises a concern that the Court cited to *AT&T* and the "presumption of arbitrability" therein, though the parties did not cite to either.[1]  [Doc. 53, p. 5]  The

---

[1] Furthermore, the Court concludes that even if the presumption of arbitrability did not apply in this case, an argument the Court does not accept, the Court would nonetheless hold that the language of the CBA requires that Plaintiff exhaust the grievance process for the reasons set out in the Court's *Memorandum Opinion and Order*. [Doc. 51, pp. 13-15]

7

Court rejects this argument for the following reasons. First, the presumption of arbitrability is directly relevant to the issue presented by the Plaintiff: whether the agreement requires arbitration of Plaintiff's claims. *See AT&T*, 475 U.S. at 648-51 (summarizing the *Steelworkers Trilogy* and discussing the standards for the Court to apply in determining whether an issue must be arbitrated pursuant to a CBA). Second, in making her argument Plaintiff relies heavily on *Maddox*. [Doc. 53, pp. 4-6] However, *Maddox* itself (like *AT&T*) sets out the presumption of arbitrability, and in doing so cites a case from the *Steelworkers Trilogy* (again, like *AT&T*):

> The language stating that an employee 'may discuss' a complaint with his foreman is susceptible to various[s] interpretations; the most likely is that an employee may, if he chooses, speak to his foreman himself without bringing in his grievance committeeman and formally embarking on Step 1. *Use of the permissive 'may' does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation. See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Belk v. Allied Aviation Service Co.*, 315 F.2d 513, *cert. denied*, 375 U.S. 847, 84 S.Ct. 102, 11 L.Ed.2d 74.

*Maddox*, 379 U.S. at 658-59 (emphasis added); *see also McGuire v. Cont'l Airlines, Inc.*, 210 F.3d 1141, 1146 (10th Cir. 2000) (rejecting non-exclusivity arguments similar to those raised by Plaintiff; citing *Maddox* for the proposition that "doubt as to the application of the [grievance] procedure is to be resolved in favor of exclusivity"). Third, Plaintiff fails to acknowledge that *Maddox* is consistently cited for the proposition that an employee must exhaust the grievance procedure set forth in the CBA before bringing suit. *See, e.g., Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 366 n.3 (1984)

(citing *Maddox* for the proposition that "exhaustion of contract grievance procedure generally is a predicate to suits seeking to enforce collective-bargaining agreements under § 301 of the LMRA"); *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 221 (1983) ("In *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Court had held that 'federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.'"). Fourth, Plaintiff ignores (and complains that the Court did not do the same) the entire line of Supreme Court cases addressing the issue she raises: whether a CBA requires arbitration (or exhaustion of the grievance process). *See AT&T*, 475 U.S. at 648 (stating that the *Steelworkers Trilogy* line of cases (including cases cited by *Maddox*) state the principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (internal quotation marks and citation omitted). Had Plaintiff cited the relevant case law, or more fully reviewed *Maddox*, she would have had to admit that these cases state a "presumption of arbitrability." *See id.* Thus, the Court did not "ignore that *Maddox* is the controlling law in this case" [Doc. 53, p. 4], but rather considered *Maddox* in whole and in the context of controlling case law, such as *AT&T*. In sum, Plaintiff's strategy of focusing on a small portion of the analysis in *Maddox*, while ignoring both the full reasoning of the case and related cases, is not well-taken.

Plaintiff submits that the Court confused the "preemption exemption" and the "exhaustion exception" set forth in *Maddox*. [Doc. 53, pp. 4-5] While the Court agrees with Plaintiff that there are two distinct concepts discussed in *Maddox*, Plaintiff identifies

9

no manifest error in the Court not parsing out or expressly identifying the two distinct concepts, and the Court does not see any. Therefore, there is no basis for the Court to "correct[] the record." [Doc. 53, p. 5]

Plaintiff requests clarification from the Court for its statement that because "a reasonable interpretation does not exclude Plaintiff's claims from the grievance process, the Court concludes Section 6.2c does not allow Plaintiff to seek redress in a Court of law for her claims without first exhausting the grievance process." [Doc. 53, p. 10] Though the Court is not persuaded that this matter requires amended or altering the Judgment, to clarify the matter for Plaintiff, she cannot seek redress in a Court of law until she first attempts to exhaust the contractual grievance process. *Maddox,* 379 U.S. at 652 ("As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress"). If she cannot exhaust the grievance process *due to the Union's breach of its duties*, then she may have a hybrid claim.

As to her duty of fair representation claim, Plaintiff repeats her laundry list of alleged failures by the Union and argues that:

> Under the circumstances of this case, it is clear error for the Court to grant the Defendants' respective motion for dismissal and throw Plaintiff back to the wolves. It is predictable that Plaintiff does not stand a fighting chance at mediation. And we already know that NMLA is going to refuse to arbitrate since they contend that all the remedy available to Plaintiff is mediation, and it is not a stretch that the Union will not seek arbitration for Plaintiff. There is absolutely no reason to believe that the Union, Borks and Clark are going to start vigorously and in good faith advocating for

10

>Plaintiff. Under these circumstances, the Court's dismissal of Plaintiff's complaint is manifest injustice.

[Doc. 53, p. 14] Despite Plaintiff's dire predictions and strongly held convictions, case law which binds this Court states:

> To prevail against his [or her] former employer under this hybrid § 301/DFR cause of action, a discharged worker must prove three elements: (1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) A violation of the collective bargaining agreement by the company.

*Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998). The Union has not yet refused to represent Plaintiff in the mediation or arbitration, and as to the remaining actions by the Union, they cannot be said to have a "causal connection . . . affecting the integrity of the arbitration process" because it was Plaintiff who terminated the grievance process (thereby preventing arbitration), not the Union. Thus, to the extent that Plaintiff argues that the total sum of alleged deficiencies by the Union already have "affected the integrity of the arbitration process" the Court must disagree because 1) no arbitration has yet occurred, and 2) until there is an actual injury there can be no remedy. In other words, Plaintiff's claims are not ripe. *C.f. Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179-80 (9th Cir. 2010) (holding that claim was not ripe "until the airline responds to the proposal, the parties complete negotiations, and the membership ratifies the CBA"). This holding further requires that conclusion that Plaintiff's statute of limitations argument fails. [Doc. 53, pp. 15-16] Finally, the Court notes that, even if the mediation and arbitration are not favorable to Plaintiff, in order to succeed in a hybrid claim she will have to prove that the Union's breach of its duties (rather than her own

11

actions) causally affected the integrity of the arbitration process. At this juncture, any such claim is speculative.

Finally, Plaintiff submits that, in its Judgment, the Court may have caused manifest injustice to Plaintiff by stating that the matter was before the Court "on Defendants' Motions to Dismiss the Complaint [Docs. 29, 30]" rather than on Defendants' Motions to Dismiss the Amended Complaint. [Doc. 53, p. 16; Doc. 52] The Court disagrees that this summarization by the Court "may result in misunderstanding and therefore manifest injustice" to Plaintiff because the cited Document numbers [Docs. 29 and 30] are Motions to Dismiss the Amended Complaint. Thus, the Court is confident that neither the parties nor any reviewing Court would misunderstand the effect of the Court's Judgment.

**CONCLUSION**

Wherefore, for the foregoing reasons:

1) Plaintiff's *Emergency Motion to Stay Pending Disposition of Rule 59(e) Motion* is hereby **DENIED AS MOOT**;

2) Plaintiff's *Motion to Alter or Amend Judgment and Order* is hereby **DENIED**.

**SO ORDERED** this 3rd day of June, 2015 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court